**PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Columbia Gas Transmission Corporation, Arkansas Louisiana Gas Company, Ozark Gas Transmission System, People's Counsel of Maryland, Tennessee Gas Pipe Line Company, East Tennessee Natural Gas Company, Midwestern Gas Transmission Company, Intervenors.**

No. 81–2129.

United States Court of Appeals, District of Columbia Circuit.

Argued May 20, 1982.

Decided June 15, 1982.

Richard A. Solomon, Washington, D. C., with whom David D'Alessandro, Washington, D. C., was on the brief, for petitioner. Dennis Lane, Washington, D. C., also entered an appearance for petitioner.

Joanne Leveque, Atty., Federal Energy Regulatory Comn., Washington, D. C., with whom Barbara J. Weller, Deputy Sol., Federal Energy Regulatory Comn., Washington, D. C., was on the brief, for respondent.

Jeron Stevens, Houston, Tex., with whom Scott E. Rozzell, Houston, Tex., was on the brief, for intervenor, Ozark Gas Transmission System.

John K. Keane, Jr., Baltimore, Md., and Fred Geldon, Washington, D. C., were on the brief, for intervenor, People's Counsel of Md.

Stephen J. Small and Giles D. H. Snyder, Charleston, W. Va., entered appearances for intervenor, Columbia Gas Transmission Corp.

Platt W. Davis, III and Kenneth H. Slade, Washington, D. C., entered appearances for intervenor, Arkansas Louisiana Gas Co.

Harold L. Talisman and James T. McManus, Washington, D. C., entered appearances for intervenors, Tennessee Gas Pipeline Company and East Tennessee Natural Gas Co., et al.

Before WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

The New York Public Service Commission (New York) challenges a decision of the Federal Energy Regulatory Commission (FERC or Commission) to grant a certificate of public convenience and necessity to Ozark Gas Transmission System to operate a new natural gas pipeline, 15 U.S.C. § 717f(c) (Supp. IV 1980). *Ozark Gas Transmission System*, Opinion No. 125 (July 28, 1981), *rehearing denied*, Opinion No. 125–A. New York's chief concern is that Ozark's financial structure required FERC to engage in close supervision of the continuing fairness of Ozark's rates.

Ozark is financed on a project basis—that is, those who lend money to finance the construction of the Ozark pipeline will have to look to earnings from the project for repayment. As required by Commission regulations, 18 C.F.R. § 157.14(a)(18) (1980), Ozark submitted a proposed rate schedule as part of its application for an operating certificate. Ozark's rates were designed to enhance the attractiveness of investment in construction of the pipeline, especially in the form of debt. Two features of the rate are important here. First, Ozark sought a "day-one" rate base: a rate base pegged at the amount of initial investment and neither decreased to account for depreciation nor increased to include new investment. Second, Ozark's rate was divided into a demand charge, adequate to cover maintenance and operating expenses, taxes other than income taxes, and interest on Ozark's debt, and a commodity charge, based on actual usage amounts and intended to provide investors with a return on equity.

Because Ozark was a relatively novel project, with no operating history, the Commission decided to approve Ozark's proposed rate structure for a two-year interim period only. Joint Appendix (J.A.) 131; *see also Trailblazer Pipeline Co.*, Opinion No. 138 (March 12, 1982), *rehearing denied*, Opinion No. 138–A (May 7, 1982). At the end of the two-year period, Ozark was required to submit a rate design, which could either continue or alter the interim rate, but which was required to be fully justified by a cost and revenue study, like any proposal for a rate increase under the Natural Gas Act, 15 U.S.C. § 717c (1976).

New York, however, maintains that the rate review two years hence does not adequately protect its consumers against the eventuality that as Ozark's rate base gradually contracts through depreciation, use of the "day-one" rate base will therefore yield excessive rates. As protection, New York seeks either a statement by this court that FERC may impose periodic rate reviews as a condition of granting an operating certificate or a declaration that in the rate review proceedings two years hence FERC may

place Ozark on a rate schedule that adjusts automatically as costs of service change.[1]

FERC rejected both of New York's proposals, principally because it found that the rate review two years hence could adequately protect New York's interests. We find this a reasonable exercise of the Commission's discretion. No one can predict with certainty what Ozark's operating picture will be like, or what rate structure Ozark will submit in two years. The Commission emphasized in oral argument that at the end of the interim period Ozark will be required to present full justifications for each aspect of the proposed rate, and will bear the burden of showing that the proposed rate is reasonable in every particular.[2] With the understanding that the interim rate will in no sense extend as a *fait accompli* beyond the two-year period, we affirm the decision of the Commission.

---

**1.** Either alternative is fraught with difficulty. Although it is settled that FERC may not grant a certificate of convenience and necessity without determining that the rates proposed are just and reasonable, *Atlantic Refining Co. v. Public Service Commission*, 360 U.S. 378, 388, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959), the extent of FERC's authority to impose periodic rate review as a condition of certification is unclear, *see Panhandle Eastern Pipe Line Co. 'v. FERC*, 613 F.2d 1120, 1127–33 (D.C.Cir.1979), *cert. denied*, 449 U.S. 889, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980). On the other hand, New York's effort to seek assurance that in two years FERC may place Ozark on a rate schedule that adjusts automatically, merely invites this court to issue a speculative statement of authority on the supposition that New York might be injured by the rates then imposed, *Baltimore Gas & Electric Co. v. ICC*, 672 F.2d 146, 149 (D.C.Cir.1982).

**2.** In response to questioning about whether the Commission viewed itself as having the authority to change any aspect of Ozark's proposed permanent rate, the Commission assured the court that:

> The Commission's order makes quite clear that it can adjust any of the elements that entered into the rate base in the first place.... The interim rates will expire. The Company is required to make a new filing. It will start with the burden of proof on every one of the elements that they put in and it will start with refund obligations just as if it were starting anew.